IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CELESTER EDWARDS, #B60954, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| K. JAIMET, MICHAEL SCOTT, CHRISTINE BROWN, JANE DOE, and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 17−cv–1344−SMY

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Celester Edwards, an inmate at Danville Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff claims that the defendants have been deliberately indifferent to his serious medical issues in violation of the Eighth Amendment. (Doc. 1). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to allow this case to proceed past the threshold stage.

## **The Complaint**

In his Complaint (Doc. 1), Plaintiff makes the following allegations: after a sleep study test was conducted at Pinckneyville on June 5, 2016, Plaintiff's "test results revealed that he suffered sleep apnea." (Doc. 1, pp. 6-7). The outside specialist who reviewed Plaintiff's chart, Dr. Thomas Lehman, ordered Plaintiff a specific treatment consideration plan, which included considering "nasal continuous positive airway pressure (PAP / Auto PAP) as a treatment option based on the RDI severity, daytime somnolence, and co-morbidities." (Doc. 1, p. 7). The plan also included a "mandibular advancement splint (MAS) or referral to an ENT surgeon for modification to the airway to reduce daytime somnolence and the potential contribution of OSA on existing disease." *Id.* Following Plaintiff's test results, he was issued "some kind of mouthpiece" by the Health Care Unit to treat his sleep apnea, though this mouthpiece was not mentioned in his sleep study specialist report as part of his treatment plan. *Id.*

On January 8, 2017, Plaintiff was seen by Nurse Practitioner Angel and told her that the mouthpiece was cutting the inside of his lower lip and falling apart. *Id.* Angel observed Plaintiff's injuries and the broken mouthpiece and referred him to be evaluated by Dr. Michael Scott. (Doc. 1, p. 8).

Plaintiff was seen by Dr. Scott on January 15, 2017. *Id.* At the appointment, he told Scott that his sleep apnea had gotten worse and that he "was suffering restless days and nights more than normal and that when he awakens he becomes restless again an hour later." *Id.* He also complained that "his sleep apnea has caused him to awaken in the middle of the night gasping for air, [with] chest pains, mucus in his throat and dizziness." *Id.* "At times, Plaintiff's cellmate had to awaken him at night due to him struggling to breathe while sleeping." *Id.* Dr. Scott responded to Plaintiff that "your not sleep now" and "what the mouth piece cost $300.00." *Id.* When Plaintiff tried to explain why he needed pain medication for the cuts from the mouthpiece, Dr. Scott asked him what he wanted him to do and told him that "they are not going to do [anything] for you." (Doc. 1, pp. 8-9). Plaintiff was sent from the health care unit without medical treatment from Dr. Scott or pain medication for his injuries. (Doc. 1, p. 9).

From January 15, 2017 to February 11, 2017, Plaintiff suffered from pain and restless nights. *Id.* On February 11, 2017, an unknown nurse saw Plaintiff concerning his mouthpiece. *Id.* Prior to that, Dr. Scott informed Plaintiff that he was going to refer him to see the dentist about his mouthpiece. *Id.* However, the unknown nurse told Plaintiff that Dr. Scott never referred him to the dentist. *Id.* Dr. Scott "never disclosed to Wexford that Plaintiff's mouth piece had broken or ordered him another one." *Id.*

Christine Brown was aware of Plaintiff's broken mouthpiece because he forwarded her a letter and grievance dated February 16, 2017 informing her of it. (Doc. 1, p. 13). In response,

3

Brown forwarded Plaintiff a memorandum stating that he saw the dentist on February 22, 2017 and voiced that the mouth piece felt better after adjusting it. "This statement by Ms. Brown in her memorandum is patently false. Plaintiff never disclosed to the dentist that his broken mouthpiece felt better." *Id.* Brown denied Plaintiff access to the dentist to retest or order him a new mouthpiece. *Id.*

On March 10, 2017, Plaintiff filed an emergency grievance requesting to be referred to a sleep study specialist for a CPAP machine and treatment for his chest pains and asthma. *Id.* He forwarded Defendant Warden K. Jaimet a letter concerning his unanswered grievance on March 30, 2017. (Doc. 1, p. 10). He never received a response from Jaimet. *Id.*

On April 13, 2017, Plaintiff forwarded a letter to the Administrative Review Board ("A.R.B.") complaining that Jaimet refused to answer his emergency grievance. *Id.* Plaintiff received a response denying his appealed grievance on June 1, 2017. *Id.* "The A.R.B. failed to address Plaintiff's March 10, 2017 grievance which he forwarded a copy [of] due to Warden Jaimet's refusal to respond to [it], however, their June 1, 2017 response was to Plaintiff's February 16, 2017 grievance he filed and appealed as well." *Id.* The A.R.B. never addressed Plaintiff's March 10, 2017 grievance, but the counselor marked it as a duplicate. *Id.*

On April 7, 2017, Plaintiff was seen by a new Wexford doctor who submitted him for a CPAP machine. *Id.* Plaintiff received the CPAP machine on April 28, 2017. (Doc. 1, p. 11). Prior to this, on April 26, 2017, Plaintiff told a Jane Doe nurse that he was experiencing chest pain and having trouble breathing. *Id.* Nurse Jane Doe told him that he did not sound like he was having trouble breathing and denied Plaintiff medication for his chest pain. *Id.*

On February 9, 2017, Plaintiff told Dr. Scott that, while in the Cook County Detention Center, he was examined by an Orthopedic Specialist who diagnosed him with Hallus Valgas

Deformity in his right foot and recommended surgery. *Id.* He also told Dr. Scott that the pain in his foot was affecting his daily activities, including his job assignment and exercise, and that it had been "very difficult for him to walk and stand because of the pain." *Id.* Dr. Scott responded that "he didn't know why Plaintiff was there to see him and that he couldn't read the nurses handwriting concerning his hammer toe. Thereafter, Dr. Scott became very negative and unprofessional with Plaintiff before he walked out of his office saying these people won't do [anything] for you down here, and you all people are always whinnying." (Doc. 1, p. 12). Dr. Scott refused Plaintiff all medical treatment, including examining his hammertoe. *Id.*

Plaintiff filed a grievance against Dr. Scott for refusing to treat his hammertoe on March 13, 2017. (Doc. 1, p. 12). In the grievance officer's response and the counselor's response, they both noted "(HCUA) Christine Brown indicated that Plaintiff's records showed that he suffered from hammertoes for years and that the outside medical provider noted that the hammertoe is an elective procedure." (Doc. 1, p. 12). The grievance officer recommended that Plaintiff's grievance be denied, and Plaintiff's appeal of the denial to the A.R.B. was also denied. *Id.*

"None of Defendant's [sic] treatment plans helped Plaintiff's chest pain, shortness of breath and sleep apnea." *Id.* "All of the Defendant's [sic] were put on notice about Plaintiff's issues and the inadequate medical treatment he received." *Id.* Because of "the persistence in a course of treatment known by the Defendant's [sic] to be ineffective, Plaintiff's condition worsened to a point that he's struggling to walk to the chow hall just to eat." (Doc. 1, p. 14). Wexford "denied any relief from the medical decisions made by Dr. Scott, Nurse Jane Doe, and HCUA Christine Brown." *Id.* One year later, "Plaintiff is still suffering foot pain, shortness of breath, chest pains, and sleep deprivation." *Id.* Plaintiff also "has severe pain and the pain becomes so unbearable that he usually cannot stand." *Id.*

5

Further, "[b]ecause Plaintiff filed grievances concerning his medical issues" and the Warden failed "to process his grievances, he was retaliated against by Warden Jaimet." *Id.* Jaimet transferred Plaintiff from Pinckneyville to Danville Correctional Center "for petitioning for redress of grievances by the A.R.B." *Id.* Plaintiff believes this action by the Warden constituted retaliation. *Id.* As a result of Jaimet's actions, Plaintiff "suffered serious physical and emotional injuries." (Doc. 1, p. 15).

Defendants Scott, Brown, and Jane Doe were "following the policy of Wexford when they denied and delayed Plaintiff medical care and treatment." *Id.* Wexford failed to take steps to ensure Plaintiff received his needed treatment "despite its knowledge of Plaintiff's serious medical needs." *Id.* Wexford has "a policy of restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive." *Id.* Sleep apnea is a deadly condition if it is not properly treated. *Id.* "Wexford is aware that Plaintiff may need surgery to correct his sleep apnea and hammer toe but is refusing him all necessary care based on cost. This is their reason [for] denying Plaintiff access to [an] orthopedic surgeon and to a sleep study specialist to perform surgery and/or other options to correct his sleep apnea besides temporary treatment from a CPAP machine that's [sic] not working." (Doc. 1, p. 16).

Plaintiff seeks monetary and injunctive relief.[1] *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into 3 Counts. The parties and the Court will use these designations in all future

---

[1] Notably, Plaintiff did not file a separate motion seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, nor does he specifically mention a desire for a preliminary, rather than permanent, injunction. Should an urgent need arise, Plaintiff may request a preliminary injunction by filing a separate motion pursuant to Rule 65. Until he does so, his request will be construed as a request for permanent, not preliminary, injunctive relief.

6

pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Defendants showed deliberate indifference to Plaintiff's sleep apnea and issues associated therewith, including chest pain and shortness of breath, in violation of the Eighth Amendment.
>
> **Count 2 –** Defendants showed deliberate indifference to Plaintiff's hammertoe and issues associated therewith in violation of the Eighth Amendment.
>
> **Count 3 –** Jaimet retaliated against Plaintiff for appealing his grievances to the A.R.B. by transferring him to Danville Correctional Center, in violation of the First Amendment.

As discussed below, each of the Counts will proceed past threshold. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Counts 1 and 2 – Deliberate Indifference

The Eighth Amendment protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). In order to state such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the inmate's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)..

Plaintiff has met the above standard with respect to both Counts 1 and 2. His allegations that sleep apnea is a potentially deadly illness and that his hammertoe has caused him extreme pain and has limited his mobility satisfy the objective standard. He also claims that Defendants Brown and Dr. Scott were aware of his issues but denied him effective care. Further, he

7

allegedly submitted grievances to Jaimet regarding his care, and instead of ensuring that Plaintiff received care, Jaimet transferred him in retaliation for his grievances. Plaintiff also alleges that Jane Doe denied him care when he told her he was experiencing chest pain and shortness of breath.

With respect to Wexford, the Seventh Circuit has held that the *Monell* theory of municipal liability applies in § 1983 claims brought against private companies that act under color of state law. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014) (noting every circuit court that has addressed the issue has extended the *Monell* standard to private corporations acting under color of state law)). In order to prevail on his claim against Wexford, Plaintiff must establish that its policies, customs, or practices caused a constitutional violation. *Whiting*, 839 F.3d at 664 (citing *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009)). In the Complaint, Plaintiff alleges that Wexford instituted several policies, customs, or practices that resulted in the denial of care for his sleep apnea and hammertoe, including its policy of restricting, if not outright denying, follow-up care ordered by a doctor when such care is expensive. Therefore, Counts 1 and 2 shall receive further review against Wexford.

Count 1 will proceed against each of the defendants, and Count 2 will proceed against all of the defendants except for Jane Doe, as Plaintiff did not include any specific allegations associating her with his hammertoe claim.

### Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224

F.3d 607 (7th Cir. 2000). To state a claim of retaliation "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). At issue is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decisions to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

Plaintiff claims that Jaimet transferred him to another prison in retaliation for his appealing the denials of his grievances. These allegations sufficiently state a retaliation claim upon which relief may be granted under the above standard. Count 3 will therefore proceed against Jaimet.

### Identification of Unknown Defendants

Plaintiff will be allowed to proceed with Count 1 against Jane Doe. However, this defendant must be identified with particularity before service of the Complaint can be made on her. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Jaimet is already named and shall be responsible for responding to discovery (formal or otherwise) aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Jane Doe is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

**Pending Motions**

Plaintiff has filed a Motion to Request Counsel (Doc. 3), which is **REFERRED** to United States Magistrate Judge Reona J. Daly.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall **PROCEED** against **JAIMET**, **SCOTT**, **BROWN**, **JANE DOE**, and **WEXFORD HEALTH SOURCES, INC.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall **PROCEED** against **JAIMET**, **SCOTT**, **BROWN**, and **WEXFORD HEALTH SOURCES, INC.** This Count shall be **DISMISSED** against **JANE DOE** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall **PROCEED** against **JAIMET**.

**IT IS ORDERED** that as to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendants **JAIMET**, **SCOTT**, **BROWN**, **JANE DOE** (once identified), and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant **JANE DOE** until such time as Plaintiff has identified her by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with her name and service address.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a decision on the pending Motion to Request Counsel (Doc. 3) and a plan for discovery aimed at identifying the unknown defendant with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
**DATED: February 1, 2018**

s/ STACI M. YANDLE
**U.S. District Judge**